UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JIM D. ODOM AND JEANE B. ODOM                                              PLAINTIFFS

V.                                                         CIVIL ACTION NO. 1:05cv669-LTS-RHW

ARMED FORCES INSURANCE A/K/A                                               DEFENDANT
ARMED FORCES INSURANCE EXCHANGE

MEMORANDUM OPINION

Before the Court is [20] Defendant's Motion for Summary Judgment or, in the alternative, Motion for Partial Summary Judgment as to punitive damages and extra-contractual claims. For the reasons stated below, the motion will be granted in part and denied in part.

The discovery that has been conducted in this case touches on issues that were not raised in the complaint. On August 29, 2005, Hurricane Katrina completely destroyed Plaintiffs' home in Diamondhead, Mississippi. The complaint alleges that Defendant's representatives failed to tell Plaintiffs that their homeowners insurance policy excluded flood but not surge, that there was no intention to cover surge, and that the separate flood policy issued to plaintiffs was inadequate in amount and coverage. Plaintiffs allege that they justifiably relied upon these "non-disclosure" representations and did not seek any additional coverage.

The deposition testimony of the Plaintiffs does not substantiate these allegations. Mr. Odom saw Defendant's advertisement in an armed services magazine, and called primarily to obtain a cheaper rate. He requested the same coverage he and his wife had with their previous insurer, and decided to purchase a policy issued by Defendant. During this one phone call, the only contact he had with Defendant prior to the storm, no representations were made about the types of coverage. Further reasoning that if there was a flood event it would affect just the bottom floor of their home, Mr. Odom asked for a quotation on $50,000.00 in flood coverage; that was the amount he bought. Mrs. Odom also indicated that no representations were made concerning the policy. The Odoms testified that, having read their homeowners policy, there were no expectations that water damage would be covered by it, and they concede, therefore, that water damages are excluded.

There is no genuine issue of material fact as to misrepresentations, justifiable reliance, or any other theory based on the purchase of the homeowners or flood policy. Plaintiffs offer no argument on that aspect of their claim, and partial summary judgment in that regard is therefore appropriate.

That does not end the Court's inquiry. There are also issues related to claim handling.

Attached to the Complaint is a letter dated 3 October 2005, which, though lengthy, deserves to be quoted in its substantive entirety:

> You have reported a "hurricane" loss to property we insure at 3522 Loulu Place, Diamondhead, Ms., having occurred 29 August, 2005. You have our most heartfelt condolences for your loss.
>
> Under the terms and conditions of your insurance policy issued by Armed Forces Insurance Company, we have the duty and obligation to investigate all facts surrounding this loss. Additionally, we have the duty and obligation to establish the damages resulting from this loss.
>
> Based upon the results of our investigation, we may, later, contend that there is no coverage under the terms of our policy and that you are not entitled to any benefits under the terms of our policy for the loss or portions of the loss. However, it does appear that the interest of both the insured and Armed Forces Insurance Company would be best served and protected by a full investigation of the facts surrounding this loss. We have requested a full and complete engineering evaluation of the loss. The investigation is currently underway, and we await further information from the engineer assigned to investigate the loss at the first available opportunity.
>
> Please see "SECTION 1–EXCLUSIONS" on pages 8 and 9 of your homeowner policy which states:
> *1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss . . . .*
> *c. Water damage, meaning:*
> > *(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;*
> > *(2) Water which backs up through sewers or drains or which overflows from a sump; or*
> > *(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.*
>
> Please be advised that any action taken by Armed Forces Insurance Company or its agents or adjusters shall, in no way, change, waive, invalidate or forfeit any of the terms, conditions, and requirements of the insurance policy or any of the rights of either of the parties under said policy. Furthermore, no act of the Armed Forces Insurance Company or its representatives via their investigation or establishment of damages shall be construed to be an admission of coverage. It is the intention of the Armed Forces Insurance Company to complete a full investigation of the claim you have reported, without, in any way, affecting, impairing or waiving any of the rights of either you or Armed Forces Insurance

> Company under the terms of you [sic] policy.  No action of the company or their representatives in the investigation and establishment of the damages shall constitute an admission of liability or an admission of coverages under your policy.

(Italics in original).

The letter is signed by Jim Duffin, Senior Staff Adjuster, with a copy going to Johns Eastern Company in Sarasota, Florida.

      This is the Court's only knowledge of any of the precise terms of Plaintiffs' homeowners policy.  It is understandable that Plaintiffs did not attach a copy to their complaint, since they lost their home and contents in the storm.  The policy is characterized in a deposition as "open peril,' meaning that there is coverage for a loss unless there is an applicable exclusion.  Reference is made to the availability of additional living expenses depending on the coverage, and that a corporate policy was adopted to reimburse insureds for such expenses for thirty days rather than two weeks for mandatory evacuation.  There is no mention of a provision for loss by "collapse."

      As with a vast number of Katrina cases, evaluation of the Plaintiffs' loss is based on physical evidence, as there is no eyewitness account.  The Johns Eastern Company copied on the letter quoted above is an independent adjusting company retained by Defendant to investigate the loss.  It sent a report to defendant in early October 2005, citing "hurricane damage" as the cause of the loss.  Defendant disputed this finding "[b]ecause we know that we had flood or surge involved in this loss, and we have to determine what is the actual cause of the damage to the property."  Deposition of Rule 30(b)(6) designee Ellen Wyrick ([23] at 38).  The matter was then referred to  The Warren Group, Forensic Engineers and Consultants, for a report.  That resulted in an opinion bearing the date of November 22, that "[t] he majority of the damage to the house was a result of the storm tide contacting the structure and separating it from the slab."  This conclusion was repeated in a letter dated December 21, to Senior Staff Adjuster Duffin.  It should be noted that the complaint in this cause of action was signed on October 27, with filing and the issuance of summons occurring on November 3.

      From Mr. Odom's perspective, broadly speaking, Defendant's actionable misconduct is that the adjuster and engineer failed to contact them (as they believed was promised), and that he and his wife never personally saw anyone connected with Defendant.  As for Mrs. Odom, it involves repeatedly receiving the same letter when they made an inquiry about their claim; "they would never give us an answer on anything."  Deposition of Jeane Odom at 24-25 (contained in [20]).  Plaintiffs also made Defendant aware of concerns they had about additional living expenses.  The Plaintiffs have also submitted a report (found in [23]), dated April 10, 2006, from an engineering expert attributing the entire loss to "horizontal hurricane winds" and stating that "there is no evidence to support a conclusion that the destruction of the Odom residence was the result of storm surge."

      What is most curious is Defendant's position, as gleaned from the 30(b)(6) designee's deposition, that Plaintiffs cannot inquire (except as Defendant deems appropriate) into its

conduct following the institution of litigation.  That is compounded by the fact that, following the July 26-27 depositions (during which it was announced by defendant that advice of counsel is not a defense), Defendant's lawyer first e-mailed (on August 4, 2006) authorization to extend $98,409.68 in settlement, then followed that with a letter dated August 18, reciting in pertinent part:

> Please find enclosed a check made payable to Jim D. Odom and Jeane B. Odom and . . . their attorney in the amount of $98,409.68 . . . . [T]his is AFI's unconditional tender of the amount of monies owed on the claim representing $56,975.68 for damages to the dwelling and personal property damages in the amount of $42,434.00 minus the Odoms' $1,000.00 deductible.  This payment is made without prejudicing your clients' right to recover a higher amount in the future through continuing negotiations or litigation.  AFI is claiming credit for these sums and the remaining coverage available will be reduced by the amount of payment as will any judgment.

(Letter is part of [24]).

Shortly thereafter, Defendant filed the present motion denominating this case a "pocket book dispute."

The Mississippi Supreme Court has recognized that "[a]n insurer's duty to promptly pay a legitimate claim does not end because a lawsuit has been filed against it for nonpayment.  Put more bluntly, if you owe a debt the duty to pay does not end when you are sued for nonpayment of it." *Gregory v. Continental Insurance Co.*, 575 So. 2d 534, 541 (Miss. 1991) (a Hurricane Elena case).  *See also Sobley v. Southern Natural Gas Co.*, 302 F.3d 325, 335 (5th Cir. 2002) (citing *Gregory*); *Tipton v. Nationwide Mutual Fire Insurance Co.*, 381 F. Supp. 2d 572, 580 (same); *Eichenseer v. Reserve Life Insurance Co.*, 682 F. Supp. 1355 (N.D. Miss. 1988), *aff'd*, 881 F.2d 1355 (5th Cir. 1989), *vacated on other grounds*, 499 U.S. 914 (1991).  Plaintiffs are entitled to take discovery concerning the handling of their claim, both before and after the filing of the complaint.

It is unclear what prompted the tender in August 2006, when a report in November, 2005, indicated that damage was due in part to something other than water.  Perhaps Defendant acted in good faith, or with a legitimate or arguable reason, but at the same time it could have been looking for a defense, *see*, *e.g., Reserve Life Insurance Co. v. McGee*, 444 So. 2d 803 (Miss. 1984), or attempting to use Plaintiffs' dire financial straits to its advantage (the tender is limited to payment for dwelling and contents losses and no other coverage), *see*, *e.g.*, *Travelers Indemnity Co. v. Wetherbee*, 368 So. 2d 829 (Miss. 1979). *Cf. Universal Life Insurance Co. v. Veasley*, 610 So. 2d 290 (Miss. 1992) (even in case where punitive damages instruction is not warranted, extra-contractual damages may be awarded).  While I express no opinion on the merits of any of this, I will observe that the unconditional tender made in August, 2006, does not change any conduct during the preceding eleven months, and does not dispose of the Plaintiffs' extra-contractual claims.  The Court is simply not in a position to know, but for the purposes of ruling on a motion for partial summary judgment as to punitive damages, Defendant's conduct at this point is at least questionable and the motion will be denied.

An appropriate order shall issue.  Decided this the 31st day of August, 2006.

S/ *L. T. Senter, Jr.*

Senior Judge